## L. C. GILMORE v. D. E. BUTTS.
### No. 9510.

CHATTEL MORTGAGE — *transactions with one not party to proceedings incompetent to show fraud in.* In a controversy between mortgage and attachment creditors over a stock of goods, where the mortgage was prior in point of time to the attachments, and where it was claimed that the mortgage was fraudulent, testimony of the transactions and business failure of the son of the debtor years before, when engaged in business for himself and with which the debtor had no connection, is incompetent; the son not being a party to the attachment proceedings nor to the action between the mortgage and attachment creditors.

Error from Miami District Court. Hon. John T. Burris, Judge. Opinion filed April 10, 1897. *Reversed.*

*B. F. Simpson, W. H. Browne* and *John C. Sheridan,* for plaintiff in error.

*W. T. Johnston* and *Ellis, Reed, Cook & Ellis,* for defendant in error.

JOHNSTON, J. In 1888, J. W. Steele engaged in the mercantile business at Paola. He was an elderly and

somewhat feeble man, and his son, Clay B. Steele, a traveling salesman, sometimes assisted him in selecting and purchasing goods. The business was carried on by J. W. Steele until July, 1891, when he died, leaving the greater part of his property to his wife, S. A. Steele. She continued the mercantile business, and, upon her request, Clay B. Steele came home and took the control and management of the business. During the latter part of 1891, S. A. Steele borrowed from the National Bank of Paola money to the amount of four thousand dollars upon four promissory notes; and it is claimed that it was used to discharge the mercantile debts of the house which accrued prior to January 1, 1892. A portion of the money borrowed from the bank was paid; but it appears that on May 14, 1892, S. A. Steele was still owing the bank $3,438.85. A note for that amount was executed to L. C. Gilmore, who was cashier of the bank, and a chattel mortgage upon the stock of goods was given to him to secure the payment of the note. The note and mortgage were delivered and recorded May 17, 1892. On the same day, S. A. Steele executed another note to L. C. Gilmore, for $750, securing its payment by a second mortgage on the goods; and it is claimed that the money obtained on this second note and mortgage was paid to Hattie Steele, the wife of Clay B. Steele, for money previously loaned by her to J. W. Steele, and which was put into the mercantile business. In the early part of 1892, S. A. Steele became indebted to Swofford Brothers Dry Goods Company, for goods purchased, to the amount of $3,000; and to Brown, Durrell & Co., in the amount of $464.24. On May 17, 1892, L. C. Gilmore took possession of the stock of goods by virtue of the chattel mortgages. On May 26, 1892, Brown, Durrell & Co. began an action against S. A. Steele to recover the amount due

them from her, and, on the following day, the Swof-- ford Brothers Dry Goods Company commenced an action for the amount of its claim. In each of these cases an attachment was levied on the stock of goods, and possession taken by the sheriff, D. E. Butts. L. C. Gilmore then brought this action of replevin to recover the possession of the goods, which it is conceded were worth more than the mortgage debts. The attaching creditors recovered judgments against S. A. Steele for the amount of their claims; and, in this action they are represented by D. E. Butts, the sheriff. They claim that there was nothing due to Hattie Steele, and that $750 was in fact advanced to Clay B. Steele in order to induce the Steeles to give L. C. Gilmore security for his claim of $3,438.85. The jury found in favor of the attaching creditors, and that the $750 was paid in order to induce the Steeles to make the larger mortgage.

The principal error assigned is in the admission of testimony. It appears that Clay B. Steele was engaged in business at Parsons, Kansas, in 1881; that he became financially embarrassed and had difficulty with his creditors, who finally obtained possession of the stock of goods. The goods were subsequently sold to the Steeles and replenished, and the business was conducted in the name of H. Steele & Co. — H. Steele being the wife of Clay B. Steele. They conducted the business until October, 1884, when they became financially embarrassed and their goods were seized and taken by certain chattel-mortgage creditors. A large volume of testimony was introduced, showing the financial transactions of Clay B. Steele and his wife at Parsons in 1881, 1882 and 1883, the difficulties they had with their creditors, the business failure and reorganization, and the subsequent breaking up of the business, leaving a large number

of debts unpaid and unprovided for. On this line, there was the testimony of nine witnesses, as well as the transcript of a judicial proceeding in Labette County between Clay B. Steele and one of his creditors, in which it appeared that judgment had been obtained and an execution thereon had been returned unsatisfied. The testimony was wholly incompetent, and should have been excluded from the jury upon the objection of the plaintiff. There is an attempt to justify its admission upon the claim that Clay B. Steele was in fact a proprietor in the business at Paola, and that, therefore, his conduct and business transactions, several years before at Parsons, tended to throw some light upon the transactions at Paola and upon the motives which actuated him in giving the mortgages to the plaintiff. The attachment creditors, however, are not warranted in assuming this position. The business was conducted in the name of S. A. Steele ; the goods were sold to her ; and the actions to recover for the goods, and the attachment proceedings, were brought against S. A. Steele alone. Clay B. Steele was not a party to the actions, and it was not claimed therein either that he owned the goods or owed the debts. He was not a party to the attachment proceedings, nor was he a party in this controversy between the mortgagees and the attaching creditors. His father, J. W. Steele, who first instituted the business at Paola, and his mother, S. A. Steele, in whose name the business was conducted after the death of her husband, never lived at Parsons, and, so for as the record discloses, never had any connection either directly or indirectly with the business of Clay B. Steele at Parsons. Clay B. Steele states that he acted as the agent of his mother in the management of her business ; and the attaching creditors, in their business relations with S. A. Steele and

in the litigation which they afterward conducted, treated him also as agent of S. A. Steele, rather than as proprietor. The present claim, that he was an owner, is altogether inconsistent with their former claims and with the pleadings and proceedings in this controversy. Upon no theory was the evidence admissible ; and the dragging in of the financial failures of Clay B. Steele and his wife, the difficulties they had with their creditors, and their personal transactions at Parsons nine or ten years before plaintiff's mortgages were given, was prejudicial error.

S. A. Steele had a right to prefer·creditors, and under the law could pay or provide for the payment of any *bona fide* claim due to Hattie Steele. There is considerable testimony tending to show that her claim was an honest one ; and, if that proves to be correct, the plaintiff committed no wrong in providing the means for payment and at the same time securing the payment of what was actually due to him. The honesty of the claims and intentions of the parties are matters for the determination of the jury ; and, in view of the conflicting testimony and the admission of that which was incompetent and prejudicial, we think another trial of the case should be had.

The judgment will, therefore, be reversed and the cause remanded for a new trial.